# Jacob D. Herkimer
## v.
## Nora Shea.

*Injury to Personal Effects of Servant—Excessive Damages—Abusive Language of Counsel Condemned.*

1.  In an action by a servant girl, to recover damages for an injury to her personal effects, resulting from the placing of them in the street by the defendant, whose services she had left under circumstances of great provocation, it is held that a verdict for thirteen times their value is excessive.

2.  This court strongly condemns the conduct of counsel for plaintiff in the trial court, in the use of extremely abusive language in speaking of the defendant, much of such language referring to irrelevant matters.

[Opinion filed May 21, 1886.]

Appeal from the County Court of Coles County; the Hon. Charles Bennett, Judge, presiding.

Messrs. Craig & Craig, for appellant.

Mr. I. McGrath, for appellee.

Pleasants, J.  This suit was commenced before a Justice of the Peace by appellee against appellant for injury to her trunk and hat, which together and including two plumes, cost, when new, $16.40.  On the trial in the County Court, upon appeal, she got a verdict and judgment for $200.

It appears that being at service in defendant's family at Mattoon, in the afternoon, at the close of the first week, she and the other hired girl changed their dresses, and went to the room of his wife, to whom plaintiff abruptly said, "Please, we want our wages; we wish to quit."

To be left, as she was—in delicate health, with a large house, entirely without help, by a concerted movement and without a moment's notice—was certainly somewhat provoking.

Mrs. Herkimer called her husband, who, on being made

acquainted with the situation, after ordering them to go to the kitchen, inquired of plaintiff the amount of her wages, and on being answered "four dollars," said she was a liar and asked his wife. She in turn asked plaintiff, "when did you come?" and the reply was she "didn't know the hour nor the minute," which seemed to strike him—not without reason—as impertinent, and he said angrily, "Answer my wife, answer my wife," snapping his fingers in her face and threatening to slap her. After some further words about a broken dish plate, in which he called both the girls liars and cursed them, he paid them their wages and told them to get out of the house or he would kick them out.

It then occurred to plaintiff, that though she had dressed to leave, herself, she had not arranged for the removal of her things, and so was under a necessity to ask a favor where she had shown no disposition to grant any. If he had discharged her without warning, she would have been entitled to a reasonable time in which to remove them. But having left of her own will, against his, and without giving him notice or opportunity to supply her place, she had no just claim upon his indulgence. When she spoke to him about leaving them until she could send for them, his answer again was: "Get out of my house or I'll kick you out," which could hardly be construed as consent, express or implied. The instruction given to the jury on that theory was without foundation in the evidence.

Nor would the law allow anything for their convenience in that behalf. Having determined to go herself, in the manner stated, she should have been prepared to take them with her. She was not so prepared and did not take them. He would therefore have been justified in removing them himself, without delay, being liable of course, if he undertook to do so, to make compensation for any injury to them through gross carelessness in handling or exposing them, and for malice or wantonness in inflicting it—to punitive damages besides.

He waited, however, until some time in the forenoon of the next day, when he and his son carried them without damage into the yard, and on returning from his farm in the evening,

Herkimer v. Shea.

and finding them still there, he set them in the street just off the sidewalk and close to the hitching post. The only witness who testified to this, except the defendant himself, says she "saw him take the trunk out of the yard. He had hold of one end of it, and dragged it out into the highway with one end on the ground. He threw down the end that he had up in a very savage manner. He pitched the bandbox out onto the trunk and it fell off. He went and got it and set it on the trunk and put out some other things that were in a sack." The witness informed a neighbor, who soon after took them to his house, where it was found the trunk was considerably broken, the lid of the bandbox off and the hat so crushed as to be of little if any value. Plaintiff testifies she left them all in good condition. When or how the damage was done, further than as above stated, was not shown.

This was the case for the plaintiff in all its extent. The injury sued for was to her property only, measurable in money and not exceeding $15, committed by a man of quick and ill-governed temper, already heated by her leaving his service as she did, and then suddenly inflamed by the sight of her things still on his premises. She and her advisers seem to have thought it could be fully redressed by a Justice of the Peace, and it is really straining to make a great matter of it. Had it been properly presented upon its merits alone, we should have hesitated to sustain the verdict.

But it was not. In his opening statement her attorney told the jury, "Old Jake Herkimer was rich, and meaner than he was rich; that he would get poor people to work for him, and never pay them; that the court dockets were loaded down with suits against him by poor people for the damnable outrages he had perpetrated," and in the closing argument, that "he was a robber, that he was no gentleman, that he was a rich man, and the meanest man in Coles County;" and even when admonished by the court, that "he would not take back anything he had said."

It is true appellant, when on the witness stand, used some very reprehensible language—but it was all in his cross-examination—to counsel who had thus characterized him, and who

has called our attention to it by an additional abstract, which, however, omits what was the beginning if not the cause of the discreditable exhibition. The record shows that after he had stated how he carried the trunk out the subject was pursued as follows: "Q. You let it down carefully? A. Yes. Q. Gently? A. Yes. Q. Were you afraid of breaking the paving stones?"

In the argument filed here counsel "admit that Herkimer was denounced in no mild terms," and say they "were but poorly able to command such language as was required by the exigencies of the case."

We are in much the same condition with reference to the manner of trying any case in a court of justice; but would be understood to condemn it in terms as strong as the proprieties of the bench would allow. Hennies v. Vogel, 87 Ill. 242; Fox v. People, 95 Ill. 71; Duffin v. People, 107 Ill. 113; City of Elgin v. Eaton, 2 Ill. App. 93.

From the verdict here rendered it may be presumed it was effective. Assuming that something could be properly awarded by way of punishment to the defendant for his conduct in this case, but nothing for loading down dockets, outrages upon the poor in general, or other irrelevant meanness, we think thirteen times the value of the property injured, reaching the limit of the jurisdiction, was clearly excessive, and must have been due, in part, at least, to prejudice and passion, which these means were so well adapted to arouse.

The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*